# CHARLESTOWN.

## REUFF *v.* COLEMAN.

Submitted June 4, 1887.—Decided September 23, 1887.

1. **WILL—LEGACY—CONDITION IN RESTRAINT OF MARRIAGE.**
   A bequest upon condition, that the legatee shall remain unmarried, until she becomes 21 years of age, is not such a restraint upon marriage, as will make the condition void. (p. 173.)

2. **WILL—CONSTRUCTION—CONDITIONS.**
   There are no technical appropriate words, which always determine a devise to be on a condition either precedent or subsequent.

If the language employed in the will shows, that the act, on which the estate depends, must be performed before the estate can vest,⁹ the condition is precedent.  (p. 174.)

3. WILL—CONDITIONS *in Terrorem.*

The doctrine of conditions *in terrorem* over the legatee applies only, where the conditions relate to marriage or contesting a will. (p. 174.)

4. WILL—LEGACY—CONDITION—BREACH.

Where the testator provided in his will, that if a girl, 18 years of age, who was at that time, and had been for several years, living in his family, should remain with his family, until she should attain 21 years of age, and continue to conduct herself, as she had theretofore done, then his executor should pay her $300.00 when she became of age; and two years before she became 21 years of age she had an illegitimate child, and at the request of the testator's widow left the family, soon after she had the child—HELD : The legatee was not entitled to be paid the legacy.

*Summerville & Braddock* for appellants.

*G. W. Caldwell* for appellees.

SNYDER, JUDGE :

Suit brought January 3, 1885, in the Circuit Court of Brooke county by John Reuff and Mary, his wife, against the executor, widow and children of D. C. Coleman, deceased, to enforce the payment of a legacy claimed by the female plaintiff under the will of said Coleman.  There was a demurrer to the bill which the court overruled.  All the defendants answered the bill.  Depositions were taken on both sides, and on the final hearing the court dismissed the bill, with costs, and the plaintiffs have appealed.

The female plaintiff, whose name was Mary Cruver, was born in July, 1850.  When she was quite young, five or six years old, she was taken by David Coleman, the father of the testator, and remained in his family until his death.  From that time, for about six years, she lived with the testator and his family until his death, in May, 1868, after which she continued to live with the family of his widow for about one year.  When at about the age of 19 years she was delivered of an illegitimate child; on account of which she, at the request of Mrs. Coleman, left, and never lived there afterwards,

except, occasionally, a few days or weeks at a time. When she was married to the male plaintiff is not shown by the record.

In the will of D. C. Coleman, which is dated May 23, 1868, the testator, after disposing of his whole estate to his widow and two infant children, made the following provision: "If the girl Mary Cruver remain with my family until she attain the age of twenty one years, and continue to conduct herself as she has heretofore done, then my will is, that my executor pay to her upon her so coming of age the sum of three hundred dollars."

The executor, widow and children of the testator resist the payment of this legacy upon the ground, that it is contingent and dependent upon two conditions: *First*, that the legatee should remain with the family until she attained the age of 21 years; and, *second*, that she should continue to conduct herself as she had theretofore done. They claim, that she has not performed or complied with either of these conditions; that before and at the date of the will the said Mary Cruver was and had always been of good behavior, and conducted herself in a chaste and proper manner; while afterwards, and before she became 21 years of age, she became unchaste and the mother of an illegitimate child, thereby making herself an unfit companion for the family, and herself and her child a burden, instead of a help, to Mrs. Coleman and her little children.

It is insisted by the appellants, that the first condition was never broken, because Mary, the legatee, did not voluntarily leave the family, except at the request of Mrs. Coleman, who had no right to discharge her. It is also insisted, that this first condition is inoperative because in partial restraint of marriage.

This is surely not such an unreasonable restraint or limitation upon the right of marriage as to render it void under any of the rules of law or authorities I have been able to find. *Maddox* v. *Maddox*, 11 Gratt. 804; *Stackpole* v. *Beaumont*, 3 Ves. 89; 2 Jarm. Wills. 563. Whether or not Mrs. Coleman had the right to send Mary away from the family before she became 21 years of age depends upon whether she, by her misconduct, failed to comply with the second condi-

tion. For, if she failed in this, she must be held guilty of violating both conditions; and, if she did not violate that, she can not be held guilty of violating either. It will be sufficient, therefore, to consider the second condition and its effect.

There can be no question, I think, that the legacy is a contingent one, and that both conditions are conditions precedent. In *Finley* v. *King*, 3 Pet. 346, 374, Marshall, C. J., says: "It is certainly well settled, that there are no technical appropriate words, which always determine a devise to be on a condition precedent or subsequent. The same words have been determined differently, and the question is always one of intention. If the language of the particular clause, or of the whole will, shows, that the act on which the estate depends must be performed before the estate can vest, the condition is of course precedent, and unless it be performed the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent." *West* v. *Moore*, 37 Miss. 114; *Drayton* v. *Grimke*, Rich Eq. Cas. 321; 2 Jarm. Wills 513. The language used in this second condition may apply either to the moral conduct and character of the legatee, or to her industry and usefulness in the performance of service for the family of the testator, or it may mean both of these. Her previous life and relations to the family naturally lead to the conclusion, that the testator meant both. She was from her youth a member of his and his father's families. They had raised her, and he must necessarily have felt some pride in her good name and character. She had also been industrious, and rendered useful services in the family, and it must be inferred, that he intended she should continue to do so. When the condition is, as it is in this instance, a condition precedent, it can not be held to be merely *in terrorem* over the legatee. Even in cases of conditions subsequent, and relating to personal estate, the *in terrorem* doctrine is not admitted except where the conditions relate to marriage and contesting a will. 2 Jarm. Wills 583; 2 Redf. Wills 298.

It is certain, that the legatee, by becoming a mother of an

illegitimate child, destroyed her character as a virtuous and chaste woman, and greatly impaired her respectability and standing among the people where she lived; and the taint would continue thereafter, regardless of the circumstances under which she became such, or of her subsequent chastity and good conduct. This is a stain from which a woman can very rarely, if ever, recover, and, whether justly or unjustly, it is one which is never forgotten and seldom forgiven. It may therefore be inferred, that it was an act which the testator intended should forfeit this legacy. If he did not so intend, it is difficult to conceive to what misconduct he could have had reference. But, if the testator meant merely, that the legatee should continue to be useful in the service of his family, it is shown by the proofs, that she had rendered herself a burden, instead of a help, to the family. Even without regard to the evidence in this case, common experience would inform us, that a woman with a small child could not be as serviceable to a family as she could be without the child. In addition to the expense and annoyance of having the child in the family, the care of it would necessarily require much of the attention and time of the mother.

It is argued by the appellants, that where there is no bequest over, in the event of a breach of the condition by the legatee, it is presumed to be the intention of the testator, that the condition should have no legal effect, but simply be held *in terrorem* over the legatee for the purpose of restraining his conduct. We have already shown, that this doctrine does not apply to conditions such as the one here in question. 2 Jarm. Wills 582. But, if the fact were otherwise, the rule would not apply here, because this legacy is not a specific, but a mere pecuniary, legacy, which, under other provisions of the will, had already vested in other legatees, subject to be divested upon the performance of the conditions by the legatee. There was, therefore, nothing to bequeath over in any event, for the whole estate had already passed under the will to, and become vested in, others.

Upon the whole case, I am of opinion to affirm the decision of the Circuit Court.

AFFIRMED.