# McMasters v. Shellito.

*Will—Construction—General and particular intent—Controlling intent.*

Where there is a manifest general intent, the construction should be such
as to effectuate it, though by that construction some particular intent may
be defeated.  The intention of a testator is .to be so construed as to be
rendered consistent with the rules of law, but, where it is plain, it will be
allowed to control the legal operation of the words, however technical.

*Devise to a class—Overstatement of number.*

Where the testator overstates the number of the objects of his bounty,
who are entitled to take as a class under a particular devise, the whole
estate will pass to the smaller number who fall within the class.

*Will—Devise to son for life—Alternative limitations to sons and daughters
of life tenant.*

Testator made the following devise:  " The place that William lives
upon, he can live upon as long as he chooses, and when he dies or leaves
it, it is to descend to his two eldest sons and for want of heirs male it is to
descend to his two eldest daughters."   *Held*, (1) that William took a
terminal life estate:  (2) that the words " in default of male heirs " have
the meaning " and in default of sons " and that the ultimate devise becomes
the gift of a fee after a fee and that the last disposition can take effect
only as an executory devise or an alternative limitation, not as a remainder;
(3) that William the life tenant died leaving two daughters and the children
of an only son, to whom the estate passes under the terms of the devise.

Argued May 21, 1900.   Appeal, No. 129, April T., 1900, by
plaintiffs, in suit of Robert McMasters and Nancy Jane Mc-

Masters, his wife, in right of Nancy Jane McMasters, against Martha Shellito, from judgment of C. P. Crawford Co., Feb. T., 1898, No. 127, in favor of defendant on case stated. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Case stated. Before LINDSEY, P. J., of the 37th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court.

The court below entered judgment on the case stated in favor of defendant. Plaintiff appealed.

*Error assigned* was the judgment of the court below was, erroneous.

*Joshua Douglass,* for appellants.—The devise was a fee simple to two eldest sons without an intervening life estate to their father, but on the contingency that these sons should be in existence at the time William left the place.

The testator had the right and power to dispose of the farm as he chose. It is true he might have devised the land to one son of William or to one daughter or to a stranger or strangers but he chose not to do either, but to devise the farm to two of his grandchildren and not to others, or to any less than two. Such is the plain direct purpose of the testator clearly and unmistakably expressed. To construe this otherwise and say that one son is as effective, to describe the object of the testator's bounty as two sons, is to directly defeat the express purposes of the testator and set at naught the real purposes of this good man.

The testator's words plainly indicate the objects of his bounty in the contingency of William not having two sons at the time he died or should leave the place.

All mere technical rules of construction must give way to the plainly expressed intentions of a testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction: Reck's Appeal, 78 Pa. 432; Schmidth's Estate, 183 Pa. 641.

The question in the case at bar is whether the daughters of William took a vested remainder under the will of their grandfather or whether or not William and son took an estate tail

under the will which gave the estate absolutely to his two eldest sons, upon the contingency of their being in existence: Abbott v. Jenkins, 10 S. & R. 296.

Where an absolute interest is given in remainder after a life estate, to the children of the first taker, a limitation over does not raise an estate tail by implication: Sheet's Estate, 52 Pa. 257; Mannerback's Estate, 133 Pa. 342.

The devise is not to William's heirs but to his two oldest sons. The term "sons" is simply descriptive of the objects of the testator's bounty.

The rule in Shelley's case is not applicable in this case because, inter alia, William's interest was merely at will, at most only an equitable interest, and the remainder after death or leaving by William is a legal estate in fee simple to two, and not to heirs generally: Rife v. Geyer, 59 Pa. 393; Mannerback's Est., 133 Pa. 342.

We maintain that upon the death of the testator the two daughters took a vested remainder in the land. The law regards vested rather than contingent remainders where they may be sustained by fair interpretation: Young v. Stoner, 37 Pa. 107; Chew's Appeal, 37 Pa. 23.

The gift of the testator was contingent of William having two sons. The contingency did not occur and the vested estate of the daughters was not divested but remains. The devise to the daughters, the testator's grandchildren, was direct and explicit: Minnig v. Batdorff, 5 Pa. 503; Chew's Appeal, 37 Pa. 23.

*H. J. Humes*, with him *F. P. Ray*, for appellee.—Judge HENDERSON says: "The language of the will indicates the illiteracy of the scrivener and that its terms were not used in a technical sense. It is not difficult, however, to ascertain the general intention of the testator, and when that is done we have a determination of the issue. And if it be true that the legal title then vested in the two granddaughters, the interest so reverting was contingent on the birth of two male heirs, and that having happened by the birth of one male heir, to wit: John, on March 30, 1847, their interest was eo instanter divested and at the same moment vested in John. So it matters not whether the estate taken was an estate tail male or a contingent remainder. In either case it vested in the male line.

We can scarcely understand the argument of appellant concerning the rule in Shelley's case. If William took more than a life estate, then the clause giving to the two granddaughters or grandsons would be weakened, and if they take in any way through William it would be as tenants in common. We have never contended that the rule in Shelley's case governed this one.

OPINION BY W. D. PORTER, J., July 26, 1900:

George Shellito died in December, 1844, having first duly executed a last will, which was probated on the 5th day of that month. The questions for determination in this case arise under the following clause in said will: "The place that William lives upon, he can live upon as long as he chooses, and when he dies, or leaves it, it is to descend to his two eldest sons, and for want of male heirs it is to descend to his two eldest daughters." No other clause in the will further limits or explains the estates which it was the intention of the testator should pass by virtue of this devise. The intention of the testator as expressed in his will or arising by clear implication therefrom, is not to be defeated by the use of technical terms in the clause under which the estate passed. It was clearly the intention of the testator that William should take in this land a life estate, subject to be sooner terminated by his voluntary surrender thereof and withdrawal from the premises. Subject to the particular estate a fee simple in remainder was given to the sons of the first taker, and then follows a limitation over on default of male heirs. The rule that a devise over in fee, after a life estate, to the sons or children of the first taker, will not enlarge the life estate into a fee by implication is too well settled to require discussion. The fact that the remaindermen stand in the relation of heirs is not sufficient to overcome the presumption of law that by "sons" purchasers were meant, even though the testator directed that they should take in the order of heirs. In the present case the two daughters who were to become entitled to take under the ultimate devise over, "for want of male heirs," were in being at the date of the will and at the time of the death of the testator. It is, therefore, manifest that in using the term "for want of male heirs" the testator referred them to a definite failure of issue male, and that

that contingency was to be determined at a time not later than the end of the life of the first taker. It was said by Mr. Justice STRONG in Sheet's Estate, 52 Pa. 257, 268 : " Moreover, both in regard to realty and personalty, it is an unbending rule that when a fee simple or an absolute interest is given in remainder after an estate for life to the children of the first taker, words following containing a limitation over on default of his issue are held not to raise an estate tail by implication. In this class of cases issue is construed to mean such issue, that is, children. The ultimate devise thus becomes the gift of a fee after a fee . . . . and the last disposition can take effect only as an executory devise, or an alternative limitation, not as a remainder." The words " and for want of male heirs," as here used, have the meaning " and in default of sons." The sons were not to take as heirs of the life tenant, but as the direct objects of the testator's bounty, as purchasers. Each son, as soon as the remainder vested, would, under the terms of this will, become the head of a new line of succession : Guthrie's Appeal, 37 Pa. 9 ; Chew's Appeal, 37 Pa. 23 ; Lantz v. Trusler, 37 Pa. 482 ; Cote v. Von Bonnhorst, 41 Pa. 243 ; Taylor v. Taylor, 63 Pa. 481. If in the present case the estate of the life tenant had by force of the expression " for want of male heirs " in the ulterior devise over, been enlarged into an estate in tail, the whole inheritance would have passed to the heir in tail upon the death of the first taker, the plaintiff would have had no standing in this action.

The appellant relies upon the interpretation of the clause in question which we have adopted, but contends that applying that clause to the facts in the present case she is entitled to recover. She is one of the eldest two daughters of William Shellito. At the date of the will William had living two daughters, both of whom survived the testator, as well as the termination of the life estate devised to William. William had no son at the date of the will, or at the death of the testator, but a son, John A. Shellito, was born on March 30, 1847, and died in 1885, leaving four children, who are his lawful heirs and the defendants in this issue. William Shellito, the life tenant, died in 1896, never having had a second son. The contention of the plaintiff is that because William never had two sons, the remainder in fee never vested in the one son who was

born, and, therefore, the devise over took effect and the estate passed to the eldest two daughters. The contention of the appellant would make the devise of the remainder in fee to the sons of William take effect only upon condition that there should be two sons, but this condition is not expressed in the will, nor can it be implied upon any reasonable principle of construction. In the devise of the remainder to the sons and daughters of William, the general intent of the testator was that sons should be preferred to daughters, and that daughters should only take in case there was a failure of male heirs, that is, sons. The particular intent was that as among sons the eldest two should be preferred. Where there is a manifest general intent, the construction should be such as to effectuate it, though by that construction some particular intent may be defeated. The intention of the testator is to be so construed as to be rendered consistent with the rules of law, but, where it is plain, it will be allowed to control the legal operation of the words, however technical. It cannot be questioned that the testator intended to dispose of the whole remainder in fee under the clause in question. At the date of the will and at the death of the testator. William had no son, but the purpose of the testator was to prefer sons, if any were born to William; that bounty to be limited, however, to the first and second sons of William. He was dealing with conditions which he could not foresee; sons might in the future be born to William, and it was his purpose to provide for those sons, but to confine that provision to the first and second born: Hoge v. Hoge, 1 S. & R. 144. The devise to the sons was not in terms immediate and was not intended for their enjoyment presently upon the death of the testator; it was a gift in remainder, to take effect after the termination of the life estate. This remainder vested as soon as a son was born who was capable of taking under the devise, subject to open and let in a second born son. No second son having been born, John A. Shellito remained the head of the new line of succession. The testator merely over estimated the number of sons that might possibly be born to William, but that can have no effect upon the will which would not have resulted in case he had made a mistake as to the number of children which his son William had living at the date of the execution of the will. Where a testator devises to the sons

or daughters of a person named, and incorrectly speaks of them as being of a particular number, the number mentioned will be disregarded and all who fall within the class, whatever their actual number, will take under the devise : Berkeley v. Palling, 1 Russell, 496, and see note ; Thompson v. Young, 25 Md. 450 ; Lawton v. Hunt, 4 Strobhart's Eq. (S. C. ) 1; Shepard v. Wright, 5 Jones' Eq. (N. C.) 20.   It was held, in Lord Selsey v. Lord Lake, 1 Beavan, 146, that an annuity charged upon land in favor of the five daughters of E, it appearing that E had four sons and one daughter, would go to the daughter, to the exclusion of the sons.   The rule seems to be well recognized that where a testator overstates the number of the objects of his bounty, who are entitled to take as a class under a particular devise, the whole estate will pass to the smaller number who fall within the class.   The remainder in fee vested in John A. Shellito, under the terms of his grandfather's will, and the alternative limitation over never took effect.

The judgment is, therefore, affirmed.